UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LAWRENCE CASO, CASO TRUST,

      Plaintiffs,

  v.

HARTFORD CASUALTY INSURANCE COMPANY,

      Defendant.

NO. 2:07-cr-0101 FCD/DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendant Hartford Casualty Insurance Company's ("defendant") motion for imposition of sanctions against plaintiffs' counsel, Andrew Woll, as a result of statements counsel made about this case in a newspaper article.[1]  The article ran in the Mountain Democrat, the local newspaper for Placerville, California.  Defendant contends plaintiffs' counsel made false and deceptive statements in the article which he knew or reasonably should have known would

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

materially prejudice the adjudicative process in this case. Such conduct defendant maintains violates California Rule of Professional Conduct, Rule 5-120, and merits both imposition of sanctions against counsel[2] as well as an order directing counsel to refrain, until the conclusion of the trial, from making any further communications to the media that violate Rule 5-120.

For the following reasons, the court DENIES defendant's motion. While plaintiff's counsel overstepped the bounds of professional conduct in some of his remarks, the court cannot find that his comments are substantially likely to materially prejudice these proceedings. As such, imposition of sanctions is not warranted.[3]

**BACKGROUND**

This case involves an insurance claim for water intrusion at the foundation of a two-story commercial building located at 550 Main Street, Placerville, California, owned by plaintiff Caso Trust (the "Property"). The water intrusion was discovered the morning of December 31, 2005, after a period of record rainfall.

---

[2] Defendant requests that the court impose sanctions in the amount of $6,000.00, $3,000.00 payable to defendant and $3,000.00 payable to the court. Said amount represents defendant's approximate costs in bringing the instant motion. (See Johnston Decl., filed Nov. 13, 2007.)

[3] While defendant does not prevail on its motion, the court does not find any basis to impose sanctions against defendant for bringing the instant motion, as requested by plaintiffs. Accordingly, the court DENIES plaintiffs' cross-motion for imposition of sanctions against defendant. As set forth below, although the court finds that plaintiffs' counsel's statements did not rise to a level sanctionable under the Rules of Professional Conduct, his statements did transcend appropriate attorney conduct, and thus, defendant had reasonable grounds to bring this motion. Sanctions against defendant are therefore not merited.

2

Around the time of the loss, it rained in a quantity that resulted in the United States President declaring a major disaster in several counties, including El Dorado County where the Property is located. Plaintiff Lawrence Caso discovered the water damage on December 31. He observed water pooling and bubbling at a level of almost four inches, along the rear of the building, starting from the southeast corner almost to the southwest corner. (Caso Dep., Ex. 7 to Evid. in Supp. of Mot., filed Nov. 13, 2007, 60:8-12, 15-61:1, 89:5-7.) He entered the suites adjacent to the back wall and found that water seeped into the carpet. (Id. at 60:15-61:1.)

The water damage to the building was reported to defendant on January 3, 2006. On January 6, 2006, defendant's adjuster, Ivan Yount, inspected the Property[4] with Mr. Caso and interviewed Mr. Caso about the loss. (See id. at Ex. 13.) On January 16, 2006, Yount sent plaintiffs a letter denying the claim because the cause of the loss was surface water. (Id. at Ex. 17.) Plaintiffs sought reconsideration of their claim on or about January 26, 2006, but again, after review by a claims supervisor, defendant denied the claim based on a disclaimer of coverage in the policy. (Id. at Exs. 16, 18.)

On December 14, 2006, plaintiffs filed the instant action against defendant, alleging claims for breach of contract and breach of the covenant of good faith and fair dealing. Thereafter, on October 15, 2007, plaintiffs' attorney, Mr. Woll,

---

[4] Yount took photos, made a diagram, and later made log notes of what he observed during the inspection. (Exs. 13, 14, 15, 16 to Evid. in Supp. of Mot.)

3

made statements about the case quoted in a newspaper article which ran on the front page of the Mountain Democrat, Placerville's local newspaper.  (Id. at Ex. 1.)  The heading to the article reads: "Building Owner Says He's Forced to Sue."  The article discusses the present litigation between plaintiffs and defendant and includes on the second page of the article a color photo of plaintiff's counsel, indicating how high the water allegedly rose in the back of the building.

As the article's contents are critical to resolution of the motion, the court quotes the entirety of the article here:

> A Main Street, Placerville, building owner said he has been forced to sue his Connecticut-based insurer after it refused to pay for water damages the building sustained in a series of 2005 storms.
> Placerville attorney Andrew Woll is not only serving as legal counsel for building owner Larry Caso, he is also a tenant of the building.
> Woll alleges the insurance carrier, Hartford Casualty, acted in bad faith when it refused to cover the $50,000 worth of damage to the rear of the building.
> "The law requires all insurers to reasonably investigate all claims," Woll said.  "Hartford's immediate denial came after no investigation and the company made repeated requests to ignore their own agent, which is despicable."
> Woll said the conduct could lead to a jury's imposition of punitive damages that exceed Caso's expenses.
> The case was transferred from El Dorado County to the U.S. District Court in Sacramento because the plaintiff and defendant are from different states.
> Woll said Hartford is now claiming that the flooding resulted from water rushing down a steep hillside behind the building, but Woll said he has plenty of evidence to suggest the water level rose due to roots clogging up the building's 8-inch drainage pipe.
> Woll showed the Mountain Democrat the large branch of roots, which he is currently keeping in his office.
> "As soon as we removed the roots, the water problems were gone," Woll said, "And what's ridiculous is that (Caso) actually bought extra protection for drain back-ups, which Hartford continues to intentionally ignore."
> Woll said Hartford did eventually decide to make a settlement offer that would cover attorney fees and actual damages, but that the offer was contingent upon Caso entering into a confidentiality agreement.

4

>     "(Caso) refused to sell his First Amendment rights and refused the offer," Woll said. "This is a common tactic for large corporations. With confidentiality, insurers are able to keep their bad faith suits secret and the public remains susceptible to the millions of dollars spent yearly by insurers to polish their image."
>     The case is set to go to trial next June. Among those due to testify on behalf of Caso are witnesses who were present when the roots were discovered and removed, and a plant expert.

**STANDARD**

California Rules of Professional Conduct, Rule 5-120, addressing "Trial Publicity," provides that an attorney who is participating in the litigation of a matter "shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if [the attorney] knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."[5] Notwithstanding this provision, the Rule provides that an attorney involved in litigation may state, among other things: "(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the person involved; (2) the information contained in a public record; (3) that an investigation of the matter is in progress; (4) the scheduling or result of any step in litigation; (5) a request for assistance in obtaining evidence and information necessary thereto . . . ."

Rule 5-120's strictures are consistent with the United States Supreme Court's decision in <u>Gentile v. State Bar of</u>

---

[5] Pursuant to Eastern District Local Rule 83-180(e), this court has adopted the California Rules of Professional Conduct, including Rule 5-120, as the "standards of professional conduct in this Court."

5

Nevada, 501 U.S. 1030 (1991).  There, in reviewing a Nevada state bar rule on extrajudicial statements to the press, the Court held that a state may constitutionally restrict attorney speech upon a showing of "substantial likelihood of material prejudice" to a fair trial.  Id. at 1075.  The Court emphasized that restricting speech of lawyers while they are involved in pending cases does not prohibit speech altogether but "merely postpones the attorneys' comments until after trial."  Id. at 1076.  Ultimately, the Court determined that states may impose "ethical restrictions on [attorneys'] speech [during pending cases] to which an ordinary citizen" could not be imposed.  Id. at 1071.

In 1995, California enacted Rule 5-120, which is incorporated by reference to these proceedings via Eastern District Local Rule 83-180(e).  The court has discretion to sanction an attorney for violation of the court's rules pursuant to Eastern District Local Rule 11-110, providing:

> Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court.

See also Dahl v. City of Huntington Beach, 84 F.3d 363 (9th Cir. 1996).

**ANALYSIS**

Defendant specifically challenges the following statements made by plaintiff's counsel as violative of Rule 5-120: (1) counsel's statement that defendant denied plaintiffs' claim immediately "after no investigation;" (2) counsel's statement that defendant's conduct could "lead to a jury's imposition of punitive damages that exceed [plaintiffs'] expenses;" (3)

6

counsel's statement that defendant "did eventually make a settlement offer that would cover attorney fees and actual damages, but that offer was contingent upon [plaintiffs] entering into a confidentiality agreement[,]" which they did not want to sign and (4) counsel's statement that plaintiff "refused to sell his First Amendment rights and refused to accept the [settlement] offer" as it was a "common tactic for large corporations . . . [to ask for confidentiality] as insurers are [then] able to keep their bad faith suits secret and the public remains susceptible to the millions of dollars spent yearly by insurers to polish their image." Defendant argues said statements were patently false in certain respects because defendant fully investigated plaintiffs' claim, and contrary to counsel's representations, defendant never made a settlement offer to plaintiffs. Defendant contends the other comments are, at a minimum, deceptive since they mislead the public into believing that plaintiffs can easily meet the high threshold of proving entitlement to punitive damages and that insurance companies like defendant are "inherently bad."

After reviewing counsel's response to defendant's arguments, the court cannot find that counsel lied in his remarks but, at least with respect to his comments regarding defendant's investigation and settlement offers, counsel's remarks were exaggerated and imprecise and as a result very unprofessional. As to defendant's investigation, counsel asserts that he was simply repeating the complaint's allegation that defendant conducted "no investigation" of the claim. However, read in proper context, the complaint's allegations assert that the

7

investigation by defendant was *inadequate*. While counsel, and his clients, may believe that the investigation was so inadequate as to be non-existent, counsel should not have reported as a statement of fact that no investigation was performed at all. Clearly, an investigation of some sort was performed by adjuster Yount. Plaintiff's counsel, having taken Yount's deposition, was well aware of this. Counsel should have qualified his comments, if made at all, to the extent that his clients assert that the investigation performed by Hartford was wholly inadequate.

Regarding settlement discussions, the parties dispute how certain offers of settlement were extended, by whom and in what context. On one hand, at the time in question,[6] defendant concedes only that it extended an offer of settlement "hypothetically" in response to an offer made by plaintiffs; plaintiffs, on the other hand, dispute the "hypothetical" nature of the offer, contending that a firm offer was made by defendant, in response to their offer, that was contingent on a confidentiality agreement--an agreement plaintiffs refused to sign. The court cannot resolve the parties' dispute on the papers filed; both parties assert a different version of the same event which occurred orally between the attorneys for the parties. Thus, the court cannot make a finding as to the veracity of plaintiffs' counsel's remarks regarding the parties' settlement discussions. Nevertheless, the court does find that counsel's remarks to the press fell outside the bounds of

---

[6] Apparently, the parties entered into other settlement negotiations that *were* subject to a confidentiality agreement; those prior discussions are not at issue here.

8

professional conduct as they violate at least the spirit of Federal Rule of Evidence 408, precluding evidence of the parties' settlement negotiations. Such remarks, detailing alleged terms of settlement negotiations have no place in media reports, possibly attainable by prospective jurors.

As to counsel's other statements, the court does not find these remarks deceptive or misleading, as alleged by defendant. Plaintiffs' counsel indicated only that a jury *could* award punitive damages, and his remark regarding alleged "bad faith" tactics of large corporations was directed generically at "insurers," and did not call specific attention to Hartford.

Ultimately, the court agrees with defendant that some of plaintiffs' counsel's remarks crossed the line of professional conduct; however, the court does not agree with defendant that counsel's comments rose to a level sanctionable under the Rules of Professional Conduct. Counsel's remarks were not extensive, they were reported in only one news article, the article appeared one day in a newspaper circulating in a small community outside of Sacramento (the location of the prospective trial), and the article appeared some eight months *before* trial is set to begin in this case. Under these circumstances, the court cannot find that there is a substantial likelihood that counsel's remarks would materially prejudice these proceedings. See generally Gentile, 501 U.S. at 1030. As such, imposition of sanctions is not merited.

/////
/////
/////

**CONCLUSION**

For the foregoing reasons, defendant's motion for sanctions and injunctive relief is DENIED. Plaintiffs' cross-motion for sanctions is DENIED.

IT IS SO ORDERED.

DATED: December 12, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE