UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LAWRENCE CASO; CASO TRUST,

       Plaintiffs,

    v.

HARTFORD CASUALTY INSURANCE
COMPANY,

      Defendant.

NO. CIV. S-07-101 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, filed by defendant Hartford Casualty Insurance Company ("defendant" or "Hartford").  Plaintiffs Lawrence Caso ("Caso") and the Caso Trust (the "Trust") (collectively, "plaintiffs") oppose the motion.  For the reasons set forth below, defendant's motion is GRANTED in part and DENIED in part.

/////

/////

1

**BACKGROUND**[1]

In 1999, Caso took title to the property located at 550 Main Street in Placerville, California, as trustee for the Trust.[2] (DRAF ¶ 50.)[3]  A two story commercial building (the "Building") is located on the property.  (DRAF ¶ 50.)  The Building is located three to five feet from a cliff extending upward for about twelve feet.  (PRUF ¶ 6.)  Behind the building is an exterior drain.  (PRUF ¶ 18.)

On December 30, 2004, Hartford issued an insurance policy for the Building for the period of March 12, 2005, to March 12, 2006 (the "Policy").  (PRUF ¶ 1.)  The policy contained a "Stretch Endorsement," which provided additional coverage for losses caused by water backing up through sewers or drains.

---

[1]     Unless otherwise noted, the facts contained herein are undisputed.  (See Pls.' Response to Def.'s Stmt. of Undisputed Facts ("PRUF") [Docket #64], filed Apr. 7, 2008.)  Where the facts are disputed, the court recounts plaintiffs' version of the facts.  (Def.'s Response to Pls.' Stmt. of Additional Disputed Facts ("DRAF") [Docket #72], filed April 18, 2008.)

[2]     Caso disputes that he took title to the property as trustee.  However, the Grant Deed grants the property to "Lawrence A. Caso, Trustee of the Caso Trust Dated September 20, 1990."  (See Def.'s Ex. X [Docket #57-8], filed Mar. 21, 2008.) Therefore, the court treats this fact as undisputed.

[3]     The parties filed detailed objections to evidence, objecting to numerous aspects of each other's evidence.  (Pls.' Objs. to Evid. [Docket #61], filed Apr. 7, 2008; Def.'s Response to Pls.' Objs. [Docket #73], filed April 18, 2008; Def.'s Objs. to Evid. [Docket #74], filed April 18, 2008; Pls.' Reply to Def.'s Objs. [Docket #77], filed April 22, 2008; Def.'s Response to Pls.' Reply to Objs. [Docket #78], filed April 23, 2008.) Except where otherwise noted herein, the court finds the parties' objections irrelevant to the motion, as the court does not rely upon the subject evidence in rendering its decision.  As such, the parties' objections are largely overruled as moot.  To the extent the court does not specifically discuss a party's objection but cites to the underlying (objected-to) evidence, that party's objection is overruled.

1 (DRAF ¶ 53.)  For this additional coverage, Hartford charged an
2 additional premium.  (DRAF ¶ 53.)

3      On or about December 30, 2005, it rained heavily in
4 Placerville.  (PRUF ¶ 10.)  Published data indicates a rain gauge
5 in the area recorded 4.9 inches of rain during the twenty-four
6 hour period ending at 9:00 a.m. on December 31, 2005, and 5.3
7 inches of rain for the period ending at noon.  (PRUF ¶ 10.)  The
8 gauge readings indicated that at no time did the rainfall exceed
9 .6 inches per hour.  (DRAF ¶ 60.)

10      On December 31, 2005, Caso discovered the Building had
11 sustained water damage.  (PRUF ¶ 4.)  At the time the water
12 damage occurred, water was standing at the rear of the Building
13 at a level of at least five inches and was above the slab
14 foundation of the Building.  (PRUF ¶ 13.)  Water penetrated the
15 Building at the rear and southeast corner.  (PRUF ¶ 14.)

16      Caso reported the loss to Hartford on January 3, 2006.
17 (PRUF ¶ 23.)  On January 6, 2006, Hartford insurance adjuster,
18 Ivan Yount ("Yount"), inspected the Building.  (PRUF ¶ 15.)
19 Yount reviewed the Policy, met with Caso, inspected the property,
20 took photos, made a diagram, and made notes of what he observed.
21 (PRUF ¶ 24.)  At the time of the inspection, there was some
22 degree of water flowing from an outlet of an exterior drain.
23 (PRUF ¶ 15.)  Hartford denied the claim for coverage on January
24 16, 2006.  (PRUF ¶ 27.)  Yount determined the cause of the loss
25 was excluded flooding; namely, surface water from heavy rains
26 that pooled in the three to five foot "trench" between the
27 Building's rear wall and the nearby vertical 115-foot cliff
28 behind the Building.  (PRUF ¶ 26.)

On January 25, 2006, Hartford insurance agent Steven Shortes wrote a "Business Memo" to Yount, on behalf of plaintiffs, requesting reconsideration of the claim. (PRUF ¶ 28.)  The memo indicated sump pumps had pumped water into the building. (PRUF ¶ 28.)  Hartford contends claim supervisor Scott Wilson ("Wilson") reviewed the Caso file, as of February 20, 2006, and concluded the disclaimer of coverage was warranted. (PRUF ¶ 29.)[4] Hartford did not, however, respond to Shortes or Caso as to why the claim remained denied. (DRAF ¶ 55.)

In March 2006, a large rootball was discovered in the main drain for the exterior drainage system. (DRAF ¶ 57.)  Caso contacted Shortes about the discovery. (DRAF ¶ 58.)  Shortes wrote to Hartford regarding the rootball. (DRAF ¶ 58.)  Hartford did not respond to the letter. (DRAF ¶ 58.)

On December 14, 2006, Caso filed suit on behalf of himself and the Trust in El Dorado County Superior Court, alleging six causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligence; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; and (6) fraud.  Plaintiffs sought damages for the repair of the water damage to the Building and alleged lost rents, as well as for expenses relating to

---

[4]    Plaintiffs object to the admission of Wilson's statement under California Insurance Claims Practices Act, 10 C.C.R. § 2695.3.  However, the CICPA contains regulations regarding an insurer's unfair claims settlement practices; the regulations have no bearing on the admissibility of certain evidence at trial.  Wilson is competent to testify about the actions he took in response to Shortes' request for reconsideration, and his declaration is properly before the court.  Plaintiffs' objection is therefore overruled.

snaking the exterior drain on December 31, 2005 and for
improvements to the exterior drainage system after the subject
loss.  (PRUF ¶s 2, 4, 20.)  On January 16, 2007, defendant
removed the case to this court on the basis of diversity
jurisdiction.  (Notice of Removal [Docket #1], filed Jan. 16,
2007.)

On January 11, 2008, plaintiffs moved to amend the pretrial
scheduling order to permit amendment of the complaint to add a
cause of action for reformation of the Policy to add Caso as a
named insured.  (Pls.' Mot. to Modify [Docket #42], filed Jan.
11, 2008.)  The court denied the motion, finding plaintiffs were
not diligent in seeking amendment of the pretrial scheduling
order.  (Mem. & Order [Docket #53], filed Feb. 15, 2008.)

Defendant now moves for summary judgment.

## STANDARD

The Federal Rules of Civil Procedure provide for summary
judgment where "the pleading, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact."  Fed. R. Civ. Proc. 56(c); see California v.
Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must
be viewed in the light most favorable to the nonmoving party.
See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en
banc).

The moving party bears the initial burden of demonstrating
the absence of a genuine issue of fact.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to
meet this burden, "the nonmoving party has no obligation to

1  produce anything, even if the nonmoving party would have the

2  ultimate burden of persuasion at trial. <u>Nissan Fire & Marine</u>

3  <u>Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

4  However, if the nonmoving party has the burden of proof at trial,

5  the moving party only needs to show "that there is an absence of

6  evidence to support the nonmoving party's case." <u>Celotex Corp.</u>,

7  477 U.S. at 325.

8       Once the moving party has met its burden of proof, the

9  nonmoving party must produce evidence on which a reasonable trier

10 of fact could find in its favor viewing the record as a whole in

11 light of the evidentiary burden the law places on that party.

12 <u>See</u> <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th

13 Cir. 1995).  The nonmoving party cannot simply rest on its

14 allegations without any significant probative evidence tending to

15 support the complaint.  <u>See</u> <u>Nissan Fire & Marine</u>, 210 F.3d at

16 1107.  Instead, through admissible evidence the nonmoving party

17 "must set forth specific facts showing that there is a genuine

18 issue for trial."  Fed. R. Civ. Proc. 56(e).

**ANALYSIS**

20 **A.   Standing**

21      Hartford argues Caso lacks standing to sue, in his

22 individual capacity, because he is not a party to the insurance

23 contract.[5]  Although insurance policies contain special features,

24 they are still contracts.  <u>Palmer v. Truck Ins. Exchange</u>, 21 Cal.

25 4th 1109, 1115 (1999).  Thus, a person "who is not a party to the

---

27      [5]      Defendant also argues that even if Caso was a party to
the contract, the contract would be void for lack of an insurable
28 interest.  The court need not reach this argument because, as set
forth <u>infra</u>, Caso was not a party to the insurance contract.

1   contract[ual] has no standing to enforce the contract or recover

2   extra-contract damages for wrongful withholding of benefits to

3   the contracting party." <u>Seretti v. Super. Nat'l Ins. Co.</u>, 71

4   Cal. App. 4th 920, 930 (1999) (internal quotations ommitted); <u>see</u>

5   <u>also</u> <u>Burns v. Cal. Fair Plan</u>, 152 Cal. App. 4th 646, 652 (2007)

6   ("The nature and effect of an insurance contract is to indemnify

7   the insured against loss or damage, and not someone else who is

8   not a party to the contract; nor has such other party any lawful

9   claim upon the amount realized by the [in]sured under the

10  policy.").

11       Caso argues he was a named insured under the Policy.

12  Contrary to his assertion, the undisputed evidence establishes

13  that Caso was not a named insured.  Hartford issued the subject

14  insurance policy on December 30, 2004, effective between March

15  12, 2005, to March 12, 2006.  (Def.'s Ex. A [Docket #57-1], filed

16  Mar. 21, 2008.)  The Policy named Caso and the Trust as insureds.

17  (<u>Id.</u>)  However, on February 21, 2005, Hartford issued a "Policy

18  Change" removing Caso as a named insured.  (<u>Id.</u>)  Specifically,

19  the Policy Change stated: "This endorsement changes the policy

20  effective on the Inception Date of the policy unless another date

21  is indicated below: . . . Named Insured and Mailing Address: Caso

22  Family Trust UA Dated 9-20-90 . . . ."  (<u>Id.</u>)  The Policy Change

23  lists an effective date of March 12, 2005.  (<u>Id.</u>)  Accordingly,

24  Caso was not a named insured under the insurance policy.

25

26

27

28

7

Caso contends he never requested to be removed from the Policy.[6] Rather, Caso asserts he only requested the word "Family" be added to the insurance policy. (Proposed First Amended Compl. ¶ 28 [Docket #42-2], filed Jan. 7, 2008.) Hartford contends Caso requested to change the named insured on the Policy from Lawrence A. Caso and the Caso Trust to "Caso Family Trust UA Dated 9-20-90." (Decl. of Ann K. Johnston ¶ 3 & Ex. A [Docket #46], filed Jan. 18, 2008.) While the parties dispute the underlying reason for the Policy Change and what specific change was requested, this dispute is irrelevant to the determination of whether Caso was a named insured under the Policy. Because Caso was not a party to the contract at the time of loss, or at any time during the effective dates of the Policy, he lacks standing to bring a claim to enforce the contract or recover extra-contractual damages.

Moreover, the parties' dispute regarding the Policy Change does not pertain to any cause of action plead in the complaint. Their dispute over the propriety of the Policy Change is relevant, if at all, to a claim by Caso, *individually*, for reformation and/or fraud. (See supra n. 6.) However, no such claims are plead in this case. (See Mem. & Order, filed Feb. 15,

---

[6]   The parties previously briefed this issue pursuant to plaintiffs' motion to amend the pretrial scheduling order to amend the complaint. (See Pls.' Mot. to Modify [Docket #42-2], filed Jan. 7, 2008; Def.'s Opp'n [Docket #45], filed Jan. 18, 2008.)  Pursuant to that motion, plaintiffs sought to add a seventh cause of action for reformation of the Policy to add Caso as a named insured.  The court denied the motion because even under plaintiffs' version of the facts, they waited over four months, after allegedly discovering defendant's position with respect to the lack of personal coverage under the Policy for Caso, to seek amendment of the pretrial scheduling order. (Mem. & Order, filed Feb. 15, 2008, at 5.)

2008 [denying leave to amend to add a reformation cause of action].)[7]

Caso argues that even if he was not a named insured under the Policy, he was an insured under the Policy's definitions of "additional" insureds.  Section C of the Policy contains the following definitions of additional insureds:

> If you[8] are designated in the Declarations as: . . . [a] trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.  Each of the following is also an insured: . . . [a]ny person (other than your 'employee'), or any organization while acting as your real estate manager.

(Def.'s Ex. A at 9-10 [Docket #57-1].)

Relying on these provisions, Caso argues he was an insured under the Policy as either a trustee of or a real estate manager for the named insured, the Trust.  However, Caso ignores the plain language of the Policy limiting insurance coverage to acts performed "with respect to [his] duties as a trustee[]" or "while acting as . . . real estate manager."  Id.  Because the loss suffered in this case--water damage to the building--was not incurred as a result of Caso fulfilling his functions as either a trustee or real estate manager, he does not qualify as an additional insured for the loss and, therefore, lacks standing to enforce the Policy or collect extra-contractual damages thereon.

---

[7]   Caso also denies ever receiving the Policy Change. Caso's present denial is insufficient to raise a triable issue of fact because it is flatly contrary to the evidence in this case. Plaintiffs attached a copy of the Policy Change to their complaint.  (Ex. A to Pls.' Compl. [Docket #1-3], filed Jan. 16, 2007.)

[8]   As used in the insurance policy, "you" and "your" refers to the named insured, the Trust.  (Def.'s Ex. A at 1 [Docket #57-1], filed Mar. 21, 2008.)

See Century Surety Co. v. Polisso, 139 Cal. App. 4th 922, 940-41 (2006) (spouse of glass installer sued for damages arising from installation subcontract found to be an additional insured because loss was incurred "with respect to conduct of a business of which [named insured] is a sole owner"); Nourigat v. Perferred Risk Mutual Ins., 59 Or. App. 362, 366 (1982) (real estate manager was not covered as additional insured for tractor-motorcycle collision where manager was not performing functions as real estate manager at the time of the collision).

Finally, Caso argues Hartford is bound by agent Shortes' assurances Caso was an insured under the Policy. An agent may bind an insurer by "any acts, agreements or representations that are within the ordinary scope and limits of the insurance business entrusted him." See Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc., 78 Cal. App. 4th 847, 874 (2000). While an agent has the authority to provide interpretations of policy coverage, this authority only extends to reasonable interpretations of *ambiguous* provisions. Id. (emphasis added). As set forth above, the plain language of the contract named only the Trust as an insured and extended coverage to Caso only with respect to acts performed while fulfilling his duties as a trustee and real estate manager. There is no ambiguity in the Policy with respect to these provisions. The court therefore finds Caso has failed to raise a triable issue of fact as to this agency theory for asserting coverage in his personal capacity.

Based on the foregoing, defendant's motion for summary judgment as to any claims brought by Caso in his individual

1  capacity is GRANTED.[9]

2  B.  **Breach of Contract**

3      Hartford moves for summary judgement as to the first cause

4  of action for breach of contract alleging the insurance policy

5  excluded coverage for the loss.[10]  Specifically, Hartford

6  contends the Stretch Endorsement excluded coverage for water

7  damage, except damage "solely caused by water that backs up from

8  a sewer or drain."[11]  Plaintiffs do not dispute this limitation,

9  _____

10     [9]   Because the court finds Caso lacks the capacity to sue,
    in his individual capacity, defendant's motion for summary
11  judgment as to the fourth and fifth causes of action for
    negligent and intentional infliction of emotional distress is
12  also GRANTED.  These alleged damages are for personal injuries
    suffered by Caso.  See Essex Ins. Co. v. Five Star Dye House, 38
13  Cal. 4th 1252, 1264 (2006) (citing Murphy v. Allstate Ins. Co.,
    17 Cal. 3d 937, 942 (1976)) (emotional distress damages arise
14  from a personal tort).  Moreover, a legal entity such as a trust
    cannot suffer emotional distress.  Cf. Huntingdon Life Sciences,
15  Inc. v. Stop Huntingdon Animal Cruelty USA, 129 Cal. App. 4th
    1228, 1260 (2005) (citing Tenants Ass'n of Park Santa Anita v.
16  Southers, 222 Cal. App. 3d 1293, 1304 (1990)) (business entity
    lacks standing to pursue tort of intentional infliction of
17  emotional distress).  As Caso has no claims in his individual
    capacity, these causes of action must be dismissed.

18     [10]  Preliminarily, Hartford moves for summary judgment,
    arguing there is no coverage for plaintiffs' allegations of water
19  damage to the Building under the "Special Property Coverage Form"
    in the Policy because all suggested causes of loss are excluded.
20  (Def.'s Mem. of P&A, filed Mar. 21, 2008, at 8-10.)  Plaintiffs
    did not oppose defendant's motion on this issue.  Instead,
21  plaintiffs only dispute defendant's further argument that
    coverage does not exist under an endorsement that extended
22  coverage to loss "solely caused by water that backs up from a
    sewer or drain."  That so-called "Stretch Endorsement" is the
23  sole basis for plaintiffs' claim of coverage, and thus, the court
    discusses only that basis for coverage herein.  In all other
24  respects, the court finds no coverage for the subject loss, and
    defendant's motion is granted with respect to their argument
25  under the Special Property Coverage Form.

26     [11]  Plaintiffs argue Hartford has waived any basis for
    denying coverage other than that stated in its denial letter.
27  However, "the denial of a claim on one ground, absent clear and
    convincing evidence to suggest otherwise, does not impliedly
28  waive grounds not stated in the denial letter."  Century Surety

but contend the water damage to the Building was caused solely by back up from the exterior drainage system.[12]

The court finds plaintiffs have proffered sufficient evidence to raise a triable issue of fact as to coverage under the Stretch Endorsement.  Plaintiffs have produced expert testimony indicating the exterior drainage system behind the Building had a capacity to drain up to 60 inches of water per day or 2.5 inches of rain per hour.  (See Decl. of Jim Dillingham ¶ 4 [Docket #60], filed Apr. 7, 2008; Report of Douglas White, Ex. 4 to Decl. of Andrew D. Woll ("Woll Decl.") [Docket #65-6], filed Apr. 7, 2008.)[13]  Plaintiffs have also proffered testimony that a large rootball was found clogging the exterior drainage system. (Decl. of Lawrence Caso ("Caso Decl.") ¶ 13 [Docket #61], filed Apr. 7, 2008; Depo. of Jim Gregg at 27:19-22, Ex. 6 to Woll Decl. [Docket #65-9], filed Apr. 7, 2008.)  If the exterior drain could handle 60 inches of rain per day, and Placerville experienced 4.9 inches of rain for twenty-four hours ending at 9:00 a.m. on

---

Co. v. Polisso, 139 Cal. App. 4th 922, 953 n.17 (2006) (citing Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 31 (1995)). Plaintiffs have not proffered any evidence, let alone clear and convincing evidence, to suggest Hartford intentionally relinquished its right to deny coverage on other grounds. Therefore, the court cannot find waiver.

[12]   Plaintiffs likewise do not challenge the legality of this contractual provision.  Such provisions are enforceable. See e.g. De Bruyn v. Sup. Ct., 158 Cal. App. 4th 1213, 1216, 1222 (2008) (citing Julian, 35 Cal. 4th at 759).

[13]   Defendant's objections to plaintiffs' experts' testimony are overruled.  (See Defs.' Objs. [Docket #74] at 15-20, 23-24.)  The testimony of Dillingham and White is properly admitted under Fed. R. Evid. 702 (see also Pls.' Reply to Defs.' Objs. [Docket #77]); defendant's objections do not provide a basis for exclusion of the subject testimony but rather raise issues which are the proper subject of cross-examination of the experts at trial.

December 20, 2005, water should not have accumulated behind the Building.  Evidence that the drain was clogged by a large tree root at the time could explain the pooling of water behind the Building.  Thus, the court cannot find as a matter of law that damage to the Building was not caused solely by back up from a drain.

Hartford asserts plaintiffs cannot show back up from the exterior drain was the sole cause of the damage because "by all accounts the loss was dependent on the accumulation of surface water from heavy rain."  (Def.'s Mem. of P&A at 11:20-21.)  In essence, Hartford argues the cause of the water accumulation was not a clogged drain but heavy rain.  (PRUF ¶s 5-14 [defendant claims the evidence shows surface water collected in the "trench" behind the Building at a time of heavy rain, and that this surface water seeped into the Building].)  However, this type of factual dispute between the parties precludes the court from granting summary judgment to the defendant.  Fed. R. Civ. P. 56(c).  Because a triable issue of fact exists as to the cause of the water damage, defendant's motion for summary judgment as to the first cause of action is DENIED.[14]

---

[14]   Defendant also separately moves for a finding that there is no coverage under the Policy for expenses plaintiffs claim they incurred for work done to the exterior drain system after plaintiffs discovered the loss.  (PRUF ¶s 18-19.)  Because the court finds a triable issue exists as to the cause of the water damage, it likewise cannot grant summary judgment to defendant regarding repairs to the exterior drain.  If plaintiffs can succeed in proving coverage, they can seek these damages under the contract which permits recovery of expenses for "direct physical loss of or damage to Covered Property . . . . caused by or resulting from any Covered Cause of Loss."  (PRUF ¶ 2.)  However, the court makes no findings as to whether the Policy, assuming the expenses are covered, otherwise *limits* such damages.  (See Reply, filed April 18, 2008, at 4:14-19.)  Defendant did not

**C.   Bad Faith**

Hartford next moves for summary judgment as to plaintiffs' second cause of action for breach of the implied covenant of good faith and fair dealing (often referred to as insurance "bad faith" claims).  The covenant of good faith and fair dealing is implied in every contract and is of particular significance in insurance law because it may support recovery of tort damages. Shade Foods, 78 Cal. App. 4th at 879.  In general, the standard of good faith and fair dealing requires an insurer to act reasonably in denying coverage.  Id.  An insurer acts unreasonably in denying coverage where, for example, it fails to reasonably investigate a claim.  Id. at 879-80.  "An unreasonable failure to investigate may be found when an insurer fails to consider, or seek to discover, evidence relevant to the issues of liability and damages."  Id. at 880.

Although not entirely clear from plaintiffs' opposition, it appears plaintiffs base their bad faith claim on Hartford's alleged failure to adequately investigate the claim of loss.[15] Caso attests in his declaration, filed in support of plaintiffs' opposition, that insurance adjuster Yount did not investigate the drainage system during his inspection of the Building on January 6, 2006.  (Caso Decl. ¶ 11 [Docket #59], filed Apr. 7, 2008.) Further, plaintiffs offer evidence indicating that on two

_____

move for summary judgment on this latter issue.

[15]   While plaintiffs brief may not have set forth a clear argument in this regard, the court must view the evidence in the light most favorable to the nonmoving party.  Lopez, 203 F.3d at 1131.  When so viewed, plaintiffs have sufficiently raised a triable issue of fact as to a claim of inadequate investigation.

subsequent occasions Hartford was notified of additional facts
potentially giving rise to coverage.   Insurance agent Shortes
wrote a memo to Hartford indicating sump pumps possibly pumped
water into the Building causing damage.   (Ex. 3 to Woll Decl
[Docket #65-3], filed Apr. 7, 2008.)   Shortes also testified that
he contacted Hartford following the discovery of the rootball in
the drainage system.   (Depo. of Stephen Shortes at 43:7-10, Ex. 1
to Woll Decl. [Docket #65-1], filed Apr. 7, 2008.)   Plaintiffs
contend Hartford failed to investigate these additional facts and
summarily relied on Yount's initial, faulty assessment.   (Caso
Decl. ¶¶ 12-13.)

Hartford denies that it failed to adequately investigate
plaintiffs' claim.   Hartford proffers the testimony of Yount's
supervisor indicating he reviewed plaintiffs' claim following
Shortes' letter regarding the sump pumps and concluded the claim
should still be denied.   (Decl. of Scott Wilson ("Wilson Decl.")
¶ 4, Def.'s Ex. R [Docket #57-7], filed Mar. 21, 2008.)
Moreover, Yount testified that, in his opinion, any rootball
existing in the exterior drainage system would not have affected
the determination of coverage.   (Yount Depo. at 62:24-63:16.)
The parties' factual disputes preclude entry of summary judgment.
See e.g. Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 824
(1979).   The court finds a triable issue of fact exists as to
whether defendant acted reasonably in denying coverage.

Notwithstanding these factual disputes, Hartford argues that
a "genuine dispute" with an insured as to the existence of
coverage precludes a finding of bad faith as a matter of law.
Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723 (2007).

15

However, the "genuine dispute" rule applies "where the insurer's position is maintained in good faith and on reasonable grounds." <u>Id.</u> "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." <u>Id.</u>; <u>see also</u> <u>Egan</u>, 24 Cal. 3d at 819 ("[A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.").  Thus, an insurer is not entitled to summary judgment where the evidence establishes triable issues of fact as to whether the disputed position was reached reasonably and in good faith.  <u>Id.</u> at 824.  As set forth above, plaintiffs have proffered evidence raising a triable issue of fact whether Hartford acted reasonably in denying the claim in this case.  Therefore, Hartford is not entitled to summary judgment based on the genuine dispute rule.

Based on the foregoing, defendant's motion for summary judgment on this claim is DENIED.

**D.   <u>Negligent Claims Handling</u>**

Hartford asserts summary judgment should also be granted as to plaintiffs' third cause of action for negligent handling of an insurance claim.  Specifically, Hartford contends negligence cannot be maintained as a separate cause of action from breach of contract or breach of the implied covenant of good faith and fair dealing.

Generally, California courts enforce the breach of a contractual promise through contract law, except when the actions constitute a breach of a social policy that merits the imposition of tort remedies.  <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 553

16

(1999).   One such exception permits the recovery of tort damages for breach of the implied covenant of good faith and fair dealing in insurance contracts.   <u>Egan</u>, 24 Cal. 3d at 817.   The California Supreme Court has held the covenant entails a duty to "fully inquire into possible bases that might support the insured's claim."   <u>Id.</u> at 819.   Thus, failure to adequately investigate an insured's claim constitutes a breach of the implied covenant of good faith and fair dealing in insurance contracts.   <u>Id.</u> at 817.

The California Supreme Court has cautioned against expanding the availability of tort remedies in contract cases.   Recovery of tort damages has been limited to a few carefully delineated situations where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm."   <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 552 (1999).   A claim for negligent claims handling does not satisfy either of these criteria.   <u>See Benavides v. State Farm Gen. Ins. Co.</u>, 136 Cal. App. 4th 1241, 1251-52 (2006); <u>see also</u> <u>Sanchez v. Lindsey Morton Claims Servs., Inc.</u>, 72 Cal. App. 4th 249, 254-55 (1999) (noting that "negligence is not among the theories of recovery generally available against insurers").

In <u>Benavides</u>, the court found that a claim for negligent claims handling cannot be sustained independent of a claim for breach of contract.   <u>Benavides</u>, 136 Cal. App. 4th at 1252.   In that case, a tenant sued her insurer following the denial of a claim for mold in a condominium unit.   <u>Id.</u> at 1245.   Although the court ultimately held that mold contamination was not a covered loss, it considered whether a cause of action for negligent

17

handling of an insurance claim could be sustained against the insurer.  Id. at 1251-52.  The court concluded the tenant's negligence claim did not "fall within the circumstances identified by the California Supreme Court which allow a contract-based cause of action to be pursued as a tort claim;" namely, the tenant's negligence claim was not based on a duty independent of the contract and the alleged conduct by the insurer was not intentional.  Id. at 1252.

Thus, this court holds, following Benavides, that plaintiffs cannot sustain a cause of action for negligent handling of an insurance claim.  Allowing an insured to sue in negligence for failure to adequately investigate a claim is redundant, since an insurer is liable for unreasonable investigation or claims handling pursuant to the implied covenant of good faith and fair dealing.  Further, the California Supreme Court has expanded the availability of tort remedies in contract cases only where the conduct breaches a duty independent of the contract or is intentional.  A claim for negligent claims handling does not satisfy this criteria.  Therefore, defendant's motion for summary judgment as to the third cause of action for negligent handling of an insurance claim is GRANTED.

**E.   Fraud**

Hartford also moves for summary judgment on the sixth cause of action for fraud.  The elements for a claim of fraud are: (1) misrepresentation (i.e., false representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  Lazar v. Super. Ct., 12 Cal. 4th 631, 637 (1996).

18

1    Plaintiffs argue Hartford made a false representation in

2  selling its insurance Policy.  Specifically, plaintiffs allege

3  Hartford's website *falsely* states: "If you add The Hartford's

4  money-saving Stretch Endorsement to your basic business owner's

5  plan, it will include valuable insurance for sewer and drain back

6  ups.  This coverage will protect you against losses caused by

7  water backing up through the sewers or drains--or by water

8  overflowing from a pump." (Ex. B to Pls.' Compl. at 5 [Docket

9  #1-4], filed Jan. 16, 2007.)  Plaintiffs argue this advertisement

10 misrepresents that the Stretch Endorsement covers drain or sewage

11 back up because the evidence in this case demonstrates defendant

12 does not provide such coverage.  (Opp'n at 16:21-22 [Docket #62],

13 filed Apr. 7, 2008 [claiming "the evidence is that they do not

14 provide such insurance as a reasonable lay person would

15 understand they represent"].)  Plaintiffs' assertion is contrary

16 to the plain language of the Policy and the breach of contract

17 claim plaintiffs press in this case.  The Stretch Endorsement

18 does provide coverage for damages "solely caused by water that

19 backs up from a sewer or drain."  Indeed, plaintiffs' claim for

20 breach of contract hinges upon this provision.  Because the

21 Policy includes coverage for drain and sewer back up, and

22 plaintiffs admit as much in alleging their breach of contract

23 claim, the court finds plaintiffs have not raised a triable issue

24 of fact whether Hartford made a false statement on its website.

25 Accordingly, the court need not consider whether plaintiffs have

26 sufficient evidence to support the other elements of this

27

28

claim,[16] and defendant's motion for summary judgment is GRANTED.

**F.   Punitive Damages**

Finally, Hartford moves for summary judgment on the issue of punitive damages.  Under California Civil Code section 3294, the recovery of punitive damages is limited to cases where the "defendant has been guilty of oppression, fraud, or malice . . . ."[17]  Cal. Civ. Code § 3294(a).  "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2).  "Malice" means "despicable conduct which is carried on by the defendant with a willfully and conscious disregard of the rights and safety of others."  Id. § 3294(c)(1). A plaintiff must prove a defendant acted with oppression or malice "by clear and convincing evidence."  Basich v. Allstate Ins. Co., 87 Cal. App. 4th 1112, 1118 (2003); Shade Foods, 78 Cal. App. 4th at 891-92 (citing Stewart v. Truck Ins. Exchange, 17 Cal. App. 4th 468, 482 (1993)).

Plaintiffs contend an award of punitive damages is appropriate because Hartford: (1) failed to inspect the hillside behind the building, (Caso Decl. ¶ 11.); (2) failed to determine the capacity of the drainage system, (Caso Decl. ¶ 11.);

---

[16]    In its reply, defendant attacks Caso's declaration, wherein he attests he relied on the subject statement from the website in purchasing the Policy.  Defendant asserts Caso's declaration contradicts his deposition testimony and should therefore be disregarded.  The court does not reach the issue of reliance as plaintiffs clearly fail to establish the first element of a claim of fraud--a misrepresentation of fact.

[17]    Having concluded plaintiffs have not raised a triable issue of fact as to fraud, the court will only address "oppression" and "malice" as a basis for awarding punitive damages.

(3) twice refused to respond to requests for consideration, (Caso
Decl. ¶¶ 12-13; Shortes Depo. at 42:6-16, 43:7-18.); (4) cited
false and misleading policy language in denying the claim, (Ex. 1
to Caso Decl. [Docket #59], filed Apr. 7, 2008.); (5) failed to
document the requests for reconsideration, (Ex. 1 to Wilson
Decl.); (6) failed to look at the rootball when reported, (Caso
Decl. ¶ 12.); and (7) failed to hire an engineer to assess the
drainage system, (Depo. of Ivan Yount at 52:4-10, Ex. 15 to Woll
Decl. [Docket #65-8], filed Apr. 7, 2008.).  This evidence is
sufficient to raise a triable issue of fact whether Hartford
engaged in the type of "despicable" conduct for which punitive
damages are available.  Construed in the light most favorable to
plaintiffs, the evidence shows Hartford provided insurance
coverage to plaintiffs for back up from drains and sewers.  Yet,
Hartford refused to adequately investigate the claim of loss and
did not respond to repeated requests, tendered by one of its own
agents, for reconsideration of its denial of a potentially
covered claim.  The court cannot find as a matter of law that no
reasonable jury could award plaintiffs punitive damages.
Accordingly, the court leaves, as is "traditionally" the proper
course, the "[d]etermination[] [of] assessment of punitive
damages . . . to the discretion of the jury."  Egan, 24 Cal. 3d
at 821.

     Hartford argues, to the contrary, that this court can
preclude punitive damages based on the decision in Shade Foods.
78 Cal. App. 4th at 891-93.  There, however, the court considered
the sufficiency of the evidence proffered at *trial* not the
sufficiency of the evidence to raise a triable issue of fact on

summary judgment. Id. at 892 (finding "the record [produced at trial] [fell] well short of establishing by clear and convincing evidence the sort of contemptible conduct that could be described by the term 'despicable.'")  In Shade Foods, the jury awarded punitive damages to an insured where the insurer "unreasonably [denied] first party coverage," "greatly overestimated the strength of its defenses," "never took any meaningful action to reassess its ill-advised denial of first party coverage," and "stubborn[ly] persist[ed]" in denying coverage based on a "careless initial evaluation." Id. at 892.  The court disagreed with the jury that this evidence was sufficient to support an award of punitive damages under the heightened clear and convincing standard of proof.  Id. at 891-92 (recognizing that while the same evidence is relevant both to the finding of bad faith and the imposition of punitive damages, the conduct required to award punitive damages must satisfy a "distinct and far more stringent standard").  Thus, at this juncture of the case, Shade Foods is inapposite.[18]

    Based on the foregoing, defendant's motion for summary judgment as to punitive damages is DENIED.

CONCLUSION

    For the reasons set forth above, defendant's motion for summary judgment is GRANTED in part and DENIED in part as follows:

_____

    [18]    Should plaintiffs' proffered evidence at trial fail to satisfy the standards set forth in Shade Foods, Hartford may file an appropriate motion under Federal Rule of Civil Procedure 50 at that time.

1.   Defendant's motion for summary judgment as to all
     claims brought by plaintiff Caso in his individual
     capacity is GRANTED;

2.   Defendant's motion for summary judgment as to the first
     cause of action for breach of contract is DENIED;

3.   Defendant's motion for summary judgment as to the
     second cause of action for breach of the implied
     covenant of good faith and fair dealing is DENIED;

4.   Defendant's motion for summary judgment as to the third
     cause of action for negligent claims handling is
     GRANTED;

5.   Defendant's motion for summary judgment as to the
     fourth cause of action for negligent infliction of
     emotional distress is GRANTED;

6.   Defendant's motion for summary judgment as to the fifth
     cause of action for intentional infliction of emotional
     distress is GRANTED;

7.   Defendant's motion for summary judgment as to the sixth
     cause of action for fraud is GRANTED; and

8.   Defendant's motion for summary judgment as to punitive
     damages is DENIED.

IT IS SO ORDERED

DATED: May 2, 2008.

_____
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE